FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 19, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN MICHAEL HAYS, | NO. 2:23-CV-0141-TOR |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| DEPUTY JOSEPH ADAMS, et al., | |
| Defendants. | |

BEFORE THE COURT is Defendant's Motion for Summary Judgment (ECF No. 33). This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Defendant's Motion for Summary Judgement (ECF No. 33) is **GRANTED**.

## BACKGROUND

The undisputed facts are as follows. On the evening of April 24, 2021, Plaintiff and his girlfriend Victoria Collier ("Collier") were at a pool tournament. ECF No. 34 at ¶ 6. The couple proceeded to get into an argument, and Plaintiff

returned to the couples' shared residence alone where Plaintiff consumed alcohol and took an Ambien to help him sleep.  ECF Nos. 34 at ¶ 7, 37-1 at ¶¶ 6,7.  Collier returned to the house several hours later with a friend, Jenny Slater ("Slater), and Collier's daughter, Summer Castro ("Castro").  ECF No. 37-1 at ¶¶ 9,10.  Once Collier entered the house, she was confronted by Plaintiff who told her to "get the fuck out" of the house.  ECF No. 34 at ¶¶ 8,9.  The couple began fighting, and Plaintiff pushed Collier and threw a cell phone striking Collier in the head causing her to bleed.  *Id.* at ¶ 10; ECF No. 1-1 at ¶ 4.3.  Slater, who remained outside the house during this time, called 911 to report the domestic dispute and her observation that Plaintiff had threatened to kill Collier and that Collier was bleeding from the head after she left the house.  *Id.* at ¶¶ 12,13.  Slater also reported that Plaintiff might be armed.  ECF No. 1-1 at ¶ 4.4.

Deputy Joseph Adams was dispatched to the residence and after interviewing Slater, Collier, and Castro, determined probable cause existed to arrest Plaintiff on charges of assault and domestic violence.  ECF No. 34 at ¶ 15. Defendant Deputy Amber Tyler and her police dog, Jäger, arrived on scene shortly after along with several other deputies.  ECF No. 1-1 at ¶¶ 4.10-4.16.  At that time, Plaintiff was still in the residence.  Deputies spent the next hour and a half outside the house attempting to get Plaintiff to surrender peacefully including knocking on the walls of the house, calling Plaintiff's cell phone fifty-six times, and making

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

several public address ("PA") announcements.  ECF Nos. 34 at 16, 1-1 at ¶ 4.15.

Plaintiff did not respond or comply with the deputies' orders to surrender.  ECF

No. 1-1 at ¶ 4.17.

Deputy Adams eventually obtained a search warrant and the deputies were

able to unlock the front door using a key from Collier.  *Id.* at ¶ 4.17.  Once the door

was open, Deputy Adams announced, "Sheriff's Office, search warrant, come to

the door" three times.  *Id.*  Defendant also gave four announcements that if

Plaintiff did not come to the door, a police dog would be sent in to search the

house and would bite Plaintiff if found.  *Id.*; ECF No. 34 at ¶ 19.  After Plaintiff

did not respond or surrender, deputies entered the house while still uncertain if

Plaintiff had a weapon.  ECF No. 1-1 at ¶ 4.19.

Deputies eventually located Plaintiff in an open attic access hatch in the

ceiling of a small closet.  ECF No. 34 at ¶ 21.  Only Plaintiff's legs were visible to

the deputies.  ECF No. 1-1 at ¶ 4.20.  Plaintiff was ordered five separate times to

show his hands and Defendant again warned that he would be bit by the police dog

if Plaintiff did not comply.  *Id.* at ¶¶ 4.20, 4.21.  After not responding or

complying, Deputy Adams and another deputy, Deputy Blaakman, each grabbed a

hold of Plaintiff's legs and attempted to pull him from the attic.  *Id.* at ¶ 4.22.

Believing that Plaintiff continued to resist arrest, Deputy Adams administered two

pain compliance strikes to Plaintiff's ribs.  ECF Nos. 1-1 at ¶ 4.22, 34 at ¶¶ 26,27.

After the compliance strikes proved ineffective, Defendant then deployed Jäger to execute a targeted bite and hold on Plaintiff's calf which was effective.  ECF Nos. 1-1 at ¶ 4.25, 34 at ¶ 28.  Deputies were able to then pull Plaintiff down from the attic.  Once on the ground, one deputy thrust a knee into the back of Plaintiff's neck while another deputy kneed him in the chest and wrestled his arm under control.  ECF No. 37-1 at ¶¶ 29,34.  Defendant ordered Jäger to release the bite once deputies had a hold of Plaintiff's hands.  ECF Nos. 1-1 at ¶¶ 4.25, 4.26, 34 at ¶ 29.  In total, Jäger bit Plaintiff for around thirty seconds.  ECF No. 37-1 at ¶ 38.  After Plaintiff was arrested, he was transported to the emergency room to receive treatment for the bite.  ECF No. 1-1 at ¶ 4.31.  Plaintiff did not have a weapon at the time of his arrest.  *Id.* at ¶ 4.33

Plaintiff originally filed his complaint with the Spokane County Superior Court on April 24, 2023, alleging seven different causes of action against twelve individual defendants.  ECF No. 1-1 at 6.  Defendants subsequently removed the case to this Court on May 9, 2023.  ECF No. 1.  On November 24, 2025, the parties filed a Stipulation of Dismissal of Certain Claims and Cross-Claims (ECF No. 32) dismissing all of Plaintiff's claims against all Defendants other than (1) Plaintiff's 42 U.S.C. § 1983 Fourth Amendment excessive force claim brought against Amber Tyler in her individual capacity; and (2) Plaintiff's common law negligence and common law intentional tort claims brought against Amber Tyler

1    personally.  ECF No. 32.  In return, Defendants stipulated to a dismissal of their

2    cross-claim under RCW 4.24.350 for malicious prosecution in its entirety.  *Id.*

3    Defendant Amber Tyler now moves for summary judgment as to the three

4    remaining claims.  ECF No. 33.

## DISCUSSION

6        As an initial matter, pursuant to the parties Stipulation of Dismissal (ECF

7    No. 32), all of Plaintiff's claims against all Defendants are **DISMISSED with**

8    **prejudice** other than (1) Plaintiff's 42 U.S.C. § 1983 Fourth Amendment excessive

9    force claim brought against Defendant Amber Tyler in her individual capacity; and

10   (2) Plaintiff's common law negligence and common law intentional tort claims

11   brought against Defendant Amber Tyler personally.  ECF No. 32.  Additionally,

12   Defendants' cross-claim under RCW 4.24.350 for malicious prosecution is

13   **DISMISSED with prejudice** in its entirety.  *Id.*

## SUMMARY JUDGMENT STANDARD

15       The Court may grant summary judgment in favor of a moving party who

16   demonstrates "that there is no genuine dispute as to any material fact and that the

17   movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling

18   on a motion for summary judgment, the Court must only consider admissible

19   evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

20   The party moving for summary judgment bears the initial burden of showing the

absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248. Further, a material fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In ruling on a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## A. Judicial Admissions

Defendant argues that certain facts Plaintiff puts forth in his response brief are contradicted by the facts in his verified complaint. ECF No. 38 at 4-5. For example, Plaintiff asserts in his response that Jäger was permitted to bite him even

after he had been handcuffed (ECF No. 37 at 9) whereas in his complaint Plaintiff

states that the bite was released "after the arresting officers had grabbed hold of his

arms." ECF No. 1-1 at ¶ 4.26. Defendant also points to Plaintiff's argument in his

response brief that once "officers entered the home, there is no objective evidence

supporting the belief that Hays had a gun or was armed" (ECF No. 37 at 11) as

contradicting the facts of complaint stating that a friend of Collier's reported to

officers in the 911 call that Plaintiff might have been armed (ECF No. 1-1 at ¶ 4.4).

ECF No. 38 at 4-5. Defendant argues that as judicial admissions, Plaintiff is bound

by the facts put forth in his verified complaint. *Id.* The Court agrees.

"Factual assertions in pleadings and pretrial orders, unless amended, are

considered judicial admissions conclusively binding on the party who made them."

*American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).

Statements contained in a complaint are judicial admissions. *Id.* Plaintiff never

moved to amend his complaint or even address these factual discrepancies despite

Defendant's notice in the summary judgment motion that she intended to rely on

the facts of Plaintiff's complaint. ECF No. 33 at 5 n.1. Therefore, the facts of

Plaintiff's complaint (ECF No. 1-1) are binding judicial admissions.

## B. Qualified Immunity

Defendant Amber Tyler (hereinafter "Defendant") asserts that Plaintiff's

Fourth Amendment excessive force claim fails under the doctrine of qualified

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 7

immunity.  ECF No. 33 at 8-16.

Qualified immunity shields government actors from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  In evaluating a state actor's assertion of qualified immunity, a court must determine: (1) whether the facts, viewed in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right; and (2) whether the right was clearly established at the time of the alleged violation such that a reasonable person in the defendant's position would have understood that his actions violated that right.  *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001) (receded from in *Pearson,* 555 U.S. 223 (holding that while *Saucier's* two step sequence for resolving government official's qualified immunity claims is often appropriate, courts may exercise their sound discretion in deciding which of the two prongs should be addressed first)).  If the answer to either inquiry is "no," then the defendant is entitled to qualified immunity and may not be held personally liable for his or her conduct.  *Glenn v. Washington Cnty.*, 673 F.3d 864, 870 (9th Cir. 2011).

The second prong of the *Saucier* analysis must be "undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).  "Only when an officer's conduct violates a clearly

1    established constitutional right – when the officer should have known he was

2    violating the Constitution – does he forfeit qualified immunity." *Lacey v.*

3    *Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012).

4    **a. Fourth Amendment Excessive Force**

5        Pursuant to the Stipulation of Dismissal (ECF No. 32), the only excessive

6    force claim that remains is Plaintiff's assertion that Defendant's execution of the

7    canine bite and hold was excessive force under the Fourth Amendment.  ECF No.

8    1-1 at ¶ 6.39.

9        When "evaluating a Fourth Amendment claim of excessive force, courts ask

10   whether the officers' actions are objectively reasonable in light of the facts and

11   circumstances confronting them." *Glenn*, 673 F.3d at 871 (quotation marks

12   omitted).  Reasonableness is "judged from the perspective of a reasonable officer

13   on the scene, 'rather than with the 20/20 vision of hindsight.'" *Id.* (quoting

14   *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  Such an analysis involves three

15   steps.  First a court "must assess the severity of the intrusion on the individual's

16   Fourth Amendment rights by evaluating 'the type and amount of force inflicted.'"

17   *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010)

18   (quoting *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003)).  Second, a court

19   "must evaluate the government's interest in the use of force." *Glenn*, 673 F.3d at

20   871.  And third, a court must "balance the gravity of the intrusion on the individual

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 9

against the government's need for that intrusion."  *Espinosa*, 598 F.3d at 537

(quoting *Miller*, 340 F.3d at 964).  This three-step inquiry "requires careful

attention to the facts and circumstances of each particular case."  *Kisela v. Hughes*,

584 U.S. 100, 103-04 (2018).

i.      *Type and Amount of Force Inflicted*

The Ninth Circuit has "classified deployment of a police dog as both a

severe use of force and a moderate use of force depending on the suspect's

condition when the dog was ordered to attack, how long the attack lasted, and

whether the dog was within its handler's control."  *Seidner v. de Vries*, 39 F.4th

591, 597 (9th Cir. 2022)

In *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994), the Ninth Circuit

found the force used to arrest the plaintiff was severe where the police dog "had to

bite the suspect three times to achieve an effective hold" and "dragged him

between four and ten feet" nearly severing his arm.  Similarly, in *Smith v. City of

Hemet*, 394 F.3d 689, 701-02 (9th Cir. 2005) (en banc), the use of force was

considered severe where officers pepper sprayed the plaintiff repeatedly even after

pinning him to the ground, and either permitted or ordered the police canine to

attack him on three separate occasions with "at least on such attack occurring while

the officers had him pinned to the ground."  In *Miller v. Clark County*, 340 F.3d at

961, a police dog found the plaintiff in the woods and bit his arm for forty-five to

1   sixty seconds before the handling officer could arrive at the location and order the

2   release.  The plaintiff's injury was serious and required surgery and a several day

3   stay in the hospital.  *Miller*, 240 F.3d at 961.  The Ninth Circuit agreed with the

4   district court's assessment that the bite was "considerable" and was "exacerbated

5   by the duration of the bite."  *Id.* at 964 ("[T]he intrusion on Miller's Fourth

6   Amendment interests was a serious one").  And in *Watkins v. City of Oakland,*

7   *Cal.*, 145 F.3d 1087 (9th Cir. 1998), a question of excessive force was raised where

8   a police dog located the plaintiff hiding in a car, bit him, and continued to bite him

9   even after officers surrounded him and ordered him to show his hands.  Recoiling

10  from the dog bite, the plaintiff was unable to comply.  The officers then dragged

11  the plaintiff from the car all while permitting the dog to continue biting him.  The

12  plaintiff required extensive surgery as a result and complained of mobility

13  problems and pain even years later.  *Watkins*, 145 F.3d at 1090.

14      In contrast, the use of force and actual harm caused was moderate in *Lowry*

15  *v. City of San Diego*, 858 F.3d 1248, 1257 (9th Cir. 2017) where the police dog

16  was followed closely by the handling officer and called off within seconds of

17  making contact with the plaintiff.  *Lowry*, 858 F.3d at 1257.  Indeed, the encounter

18  "was so brief that [the officer] did not even know if contact had occurred."  *Id.*

19  The resulting bite to the plaintiff's lip required three stitches.  *Id.* at 1254.

20      Defendant contends the use of force in this case aligns more closely with the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 11

force used in *Lowry*.  ECF No. 33 at 10.  The Court disagrees.  While Defendant did have control over Jäger by having hands on his collar and harness when the bite and hold was executed, this was not a situation where the contact was brief and the resulting damage relatively minor.  It is undisputed that the canine executed a targeted bite and hold on Plaintiff's calf for around thirty seconds.  ECF No. 36 at ¶ 25.  The bite began while Plaintiff's legs were hanging out of the attic, around three feet off the ground, and by all accounts as soon as the bite was applied, Plaintiff released his grip and/or fell from the attic.  ECF Nos. 35-1 at 60:16-24, 35-2 at 22:17-19, 37-3 at 4.  Thus, the majority of that thirty seconds of the bite was while Plaintiff was pulled from the attic to the hallway floor and wrestled under control by at least two deputies.  ECF Nos. 35-2 at 22:17-19, 37-1 at 11, 39 at 11.  During that time, and while still being bitten by Jäger, one deputy thrust a knee into the back of Plaintiff's neck while another deputy kneed him in the chest and ripped his arm back with such force it tore muscle in his arm and chest.  ECF No. 37-1 at ¶¶ 29,34.  After Defendant finally released the bite once deputies had a hold of Plaintiff's arms, Plaintiff had to be rushed to the emergency room for emergency surgery to repair his calf.  *Id.* at ¶ 39.  Plaintiff states the injury still affects him to this day.  *Id.* at ¶ 40.

Viewing all the facts together, the Court finds they fit more closely with those of *Chew*, *Smith*, *Miller*, and *Watkins*.  The canine bite on Plaintiff was a

1   severe use of force.

2       ii.    *The Deputy's Interest in Use of Force*

3       A court "must evaluate the government's interests by assessing (1) the

4   severity of the crime; (2) whether the suspect posed an immediate threat to the

5   officers' or public's safety; and (3) whether the suspect was resisting arrest or

6   attempting to escape." *Espinosa*, 598 F.3d at 537.

7       Defendant argues that Plaintiff's episode of domestic violence, specifically

8   him pushing Collier at least twice and throwing a phone at her head, and threats to

9   kill Collier were a severe crime. ECF No. 33 at 11. Plaintiff counters that the

10  crime he was suspected of committing was a gross misdemeanor and that a

11  question of fact exists as to whether Plaintiff intended to hit Collier with the phone

12  and whether those allegations justified the use of a canine bite. ECF No. 37 at 14.

13      Defendant contends that both the Washington Legislature and the Ninth

14  Circuit have recognized domestic violence as serious crimes. Indeed, RCW

15  10.31.100(2)(d) requires an officer to make an arrest when they have probable

16  cause that a person "within the preceding four hours has assaulted a family or

17  household member or intimate partner" and the officer believes "an assault has

18  occurred which has resulted in bodily injury to the victim." RCW 10.31.100(2)(d);

19  *see also United States v. Martinez*, 406 F.3d 1160, 1164 (9th Cir. 2005) ("When

20  officers respond to a domestic abuse call, they understand that violence may be

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 13

1  lurking and explode with little warning.  Indeed, more officers are killed or injured

2  on domestic violence calls than on any other type of call.").

3      In this case, Collier's friend, Jenny Slater called 911 and reported that she

4  could hear Plaintiff and Collier yelling at each other in the house, Plaintiff had

5  threatened to kill Collier, Collier had been hit in the head and was bleeding, and

6  that Plaintiff might be armed.  ECF Nos. 1-1 at ¶ 4.4, 34 at ¶ 13.  Deputy Adams

7  arrived on scene, and after speaking with Collier and Castro, and observing

8  Collier's head injury, he determined probable cause existed to arrest Plaintiff on

9  gross misdemeanor charges of assault/domestic violence.  ECF Nos. 1-1 at ¶ 4.6,

10 34 at ¶ 15.  Deputies were therefore statutorily mandated to make an arrest within

11 four hours of the assault.  RCW 10.31.100(2)(d).  Based on these facts, the first

12 factor weighs in favor of Defendant.

13     The second factor also weighs in favor of Defendant.  Defendant argues that

14 she and the other deputies did not know if Plaintiff was armed when they entered

15 the house but believed he could have been based on Slater's 911 call.  ECF No. 33

16 at 12.  Plaintiff responds that by the time deputies entered the house, there was no

17 objective evidence supporting the belief that Plaintiff was armed.  ECF No. 37 at

18 11.  However, as Defendant points out, that statement is contrary to Plaintiff's

19 admission in his complaint that Slater had reported to police that Plaintiff may

20 have been armed.  ECF No. 1-1 at ¶ 4.4.  Indeed, the 911 call log Plaintiff provides

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

as an exhibit shows Slater indicating that Plaintiff may have had a weapon.

| | | |
|---|---|---|
| Call receiver: | Does he have a weapon? |
| Slater: | Um, I'm pretty sure. He had a gun last time I knew. |
| Call receiver: | Ok. Did you see a gun? |
| Slater: | I did not. |
| . . . | |
| Call receiver: | So he's known to carry a firearm but you haven't seen one today? |
| Slater: | Correct. |

ECF No. 37-2 at 75.

Moreover, other evidence Plaintiff relies on does not support his contention but further demonstrates that deputies did not know whether Plaintiff had a weapon when they entered the house. First, Plaintiff states that while still on the phone with the 911 operator, Slater asked Collier if Plaintiff had a gun and Collier "indicated she was hit with a phone and did not believe Hays had a gun because he had sold whatever guns he had." ECF No. 37-1 at ¶ 12. Plaintiff also states in his response brief that after Collier got in the car with Slater, and Slater was still on the phone with 911, "Collier dispelled the notion that Hays had a gun." ECF No. 37 at 11. But Plaintiff's cited exhibit, the 911 call log, again does not support these statements. Collier never explicitly stated that Plaintiff did not have a gun, but

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

rather that she was not sure if he was armed even though she did not see a weapon.

| | | |
|---|---|---|
| Call receiver: | Can you ask her if John was armed? |
| Slater: | Victoria, was John armed? |
| Collier: | *I don't know* (indiscernible) |
| Call receiver: | Did she see any weapons? |
| Slater: | She didn't see any weapons.  She said all of her clothes are shredded in the kitchen. |
| Call receiver: | Did he shred them with something? |
| Slater: | Huh? |
| Call receiver: | Did she – did she see him – did she see him shred them with something? |
| Slater: | No. We literally just got home from a tournament and he told us he was going to kill her. |

ECF No. 37-2 at 76 (emphasis added).

Plaintiff further asserts that "Deputy Watts understood at the time he entered the home that whatever guns Hays may have had were sold."  ECF No. 37-1 at ¶ 13. But during Deputy Watts's deposition, he indicated that they did not know if Plaintiff had a weapon at that time.

> Q. Okay. At this time prior to you guys gaining entry to the home, is there any known concerns that Mr. Hays has weapons?
>
> A[Deputy Watts]. I think I reference it in the report. . . . Deputy Adams had taken a statement from Victoria and her daughter. I asked if John had any weapons in the home. Usually that's Adams. Victoria said that she is not sure but that he has had weapons but *may have sold them*. . . . So usually when we hear things like that, our concern is we do not

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

know, we don't know if weapons are present or not.

ECF No. 37-2 at 83-84 (emphasis added).

None of the provided evidence supports Plaintiff's assertion that the officers and Defendant had no reason to believe that Plaintiff was armed by the time they entered the house. The Court cannot conclude there is a genuine issue of fact as to Defendant's uncertainty of whether Plaintiff had a weapon. Thus, from Defendant's perspective, Defendant entered the house with the deputies after hours of Plaintiff refusing to surrender despite repeated orders and phone calls to do so, entered the house knowing that it was possible Plaintiff had a weapon, located Plaintiff seemingly hiding in the attic that could only be accessed through the ceiling in a small closet, and could not see Plaintiff's upper body or the rest of the attic as they attempted to pull him down after he again refused to surrender or show his hands to the deputies after five orders to do so. A reasonable officer could conclude Plaintiff posed a safety threat to the officer and other deputies in the vicinity.

The third factor, whether the suspect was resisting arrest or attempting to escape, also weighs in favor of Defendant. Deputies spent an hour and a half outside of Plaintiff's house attempting to get Plaintiff to exit the house peacefully, and Plaintiff failed to comply. Deputy Jones made several PA announcements from his vehicle for Plaintiff to exit the house and knocked on the front windows

and wall near the front door.  ECF No. 1-1 at ¶ 4.13.  Deputy Jones also called

Plaintiff's cell phone fifty-six times and left two voicemails requesting Plaintiff

call him back.  *Id.* at ¶ 4.18.  Once deputies obtained a search warrant and opened

the front door of the house, Deputy Adams announced into the house three separate

times that Plaintiff needed to surrender, and Defendant warned an additional four

times that a police dog would be released to search the house and would bite

Plaintiff if he found him.  ECF No. 1-1 at ¶ 4.17.  Plaintiff did not comply.  Upon

locating Plaintiff in the attic, deputies ordered Plaintiff to show his hands five more

times and warned again that Plaintiff would be bit by the police dog if he did not

comply.  *Id.* at ¶¶ 4.20, 4.21.  Even after deputies began pulling on Plaintiff's legs,

it still appeared that Plaintiff was holding onto something in the attic in an attempt

to resist arrest.  *Id.* at ¶ 4.22.  Jäger was finally deployed after Deputy Adams

administered the two pain compliance strikes to no avail.  *Id.* at ¶¶ 4.22, 4.23.

Defendant also asserts that Plaintiff was actively kicking his legs to resist being

pulled from the attic prior to the canine bite.  ECF No. 33 at 13.

Plaintiff asserts that a question of fact exists as to whether Plaintiff was

conscious or not in the attic and therefore actively resisting arrest.  ECF No. 37 at

15.  Plaintiff asserts that the combination of alcohol and the Ambien rendered him

confused, potentially causing him to confuse the attic with his bedroom.  ECF No.

37-1 at ¶ 20.  Once in the attic, Plaintiff became unconscious and did not hear any

1   of the announcements to surrender or warnings that Jäger would be deployed and

2   bite him if he was found. *Id.* at ¶ 19. Plaintiff contends that he only woke up once

3   Jäger started biting him, and he only kicked is legs in response to the bite, not in an

4   attempt to resist arrest. *Id.* at ¶ 28. Defendant counters that if Plaintiff was not

5   consciously aware of what was happening up until the dog bite as he claims, he

6   cannot contest Deputy Adams's testimony that Plaintiff was kicking his legs prior

7   to the bite. ECF No. 39 at 3-4.

8        Regardless of whether Plaintiff was conscious or not in the attic, "[t]he

9   qualified immunity analysis . . . is limited to 'the facts that were knowable to the

10  defendant officers' at the time they engaged in the conduct in question.'"

11  *Hernandez v. Mesa*, 582 U.S. 548, 554 (2017) (quoting *White v. Pauly*, 580 U.S.

12  73, 77 (2017) (*per curiam*)). None of the facts suggest the deputies had any reason

13  to suspect that Plaintiff was unconscious in the attic and, as a result, did not hear

14  any of the numerous orders to surrender and warnings of a canine bite otherwise.

15  Plaintiff even concedes in his complaint that once Deputy Adams and Deputy

16  Blaakman had hold of Plaintiff's legs, Deputy Adams "felt Hay's leg muscles tense

17  and his torso rotate, and believed he was hanging on to something to resist arrest."

18  ECF No. 1-1 at ¶ 4.22. From a reasonable officer's perspective, Plaintiff was

19  evading and resisting arrest up to the point Defendant executed the bite and hold

20  on Plaintiff's leg.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 19

Plaintiff also asserts that once he was pulled from the attic, Jäger was permitted to keep biting Plaintiff even after the deputies ripped his arms back, handcuffed him, and then stood up and walked away. ECF No. 37-1 at 7. However, Plaintiff stated in his complaint that the bite was released once deputies grabbed hold of his arms. ECF No. 1-1 at ¶ 4.26. And Defendant also asserts that the bite was released once Plaintiff's hands were under control. ECF No. 39 at ¶ 29.

The Ninth Circuit has made it clear "that an officer cannot direct a police dog to continue biting a suspect who has fully surrendered and is under the officer's control." *Hernandez v. Town of gilbert*, 989 F.3d 739, 745 (9th Cir. 2021). Plaintiff does not allege that he fully surrendered prior to his hands being grabbed or that he indicated to the deputies that he had surrendered. On the contrary, Plaintiff testified that he did not follow the deputies' commands to stop resisting and continued kicking his legs while on the floor for around fifteen seconds until deputies were able to get his arms behind his back. ECF No. 37-2 at 30. Plaintiff testified that the kicking was in response to the dog bite and not in attempt to resist arrest. *Id.* However, deputies still had to wrestle with Plaintiff to get him face down and put his arms behind his back, and Plaintiff did not make any communication that he was willing to surrender. Plaintiff's failure to surrender at any point up until the dog bite and his apparent continued resistance while on the

floor would not lead a reasonable officer to conclude that Plaintiff had fully surrendered prior to his hands being grabbed by deputies.

Plaintiff finally argues that Defendant could have used less intrusive tactics to apprehend him other than the canine bite. The Court does not find this argument persuasive as it is undisputed that deputies did attempt to use less intrusive methods prior to the bite including calling Plaintiff's phone fifty-six times, repeatedly announcing orders to surrender both outside the house and inside the house with warnings that Jäger would be deployed and might bite him, pulling on Plaintiff's legs, and even administering pain compliance strikes to Plaintiff's ribs in an attempt to pull him from the attic. Moreover, Deputy Adams testified that a taser was not appropriate in this situation because of Plaintiff's elevated position. ECF No. 60 at 59-60. Plaintiff does not offer what other less intrusive tactics should have been used prior to the bite.

### iii.    Gravity of Intrusion versus the Government's Need for Intrusion

Defendant argues the degree of force was commensurate with the Defendant's interest in use of that force because of Plaintiff's repeated failure to comply to demands to surrender both pre-entry, post-entry, and after warnings that Jäger would be deployed, and after lower levels of force proved unsuccessful. ECF No. 33 at 14-15. Plaintiff again argues that he did not hear the numerous announcements to surrender because he was unconscious and that a reasonable

juror could conclude that he did not hear such announcements and was therefore not actively resisting arrest.  ECF No. 37 at 17-18.

As the Court has explained, the inquiry into the objective reasonableness of a particular use of force "must be viewed from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Lowry*, 858 F.3d at 1256 (quoting *Graham*, 490 U.S. at 396).  There is no evidence to suggest the deputies may have believed or could have known that Plaintiff was unconscious in the attic.

The Court concludes that the severity of force used in this case was warranted by the deputies' need for such force.  Deputies arrived on scene with reports that Plaintiff had assaulted Collier, threatened to kill her, and was possibly armed.  And while Collier was separated from Plaintiff by the time deputies arrived at the house, Plaintiff had locked himself inside their shared residence and possibly had a weapon.  Deputies repeatedly ordered Plaintiff to surrender peacefully both before entering the house and after, and warned that a police dog would be deployed and may bite him.  Plaintiff did not comply.  Upon locating Plaintiff in the attic, deputies ordered him to show his hands five times and again warned that he would be bitten if he failed to comply.  Plaintiff did not respond or comply.  Deputies attempted to use a lesser intrusive means to make an arrest by first pulling on each of Plaintiff's legs and then administering two pain compliance

strikes to Plaintiff's ribs, all while not having a visual on Plaintiff's hands or inside the attic.  Only after those failed and deputies believed Plaintiff was holding onto something in the attic to resist arrest was Jäger used to execute a bite and hold.  The bite was released once Plaintiff was pulled from the attic to the floor and deputies had his hands under control.

These facts are dissimilar from those of *Watkins v. City of Oakland* where there was no evidence that the plaintiff was armed, and the canine was permitted to keep biting the plaintiff even though he was clearly helpless and surrounded by police officers with their guns drawn.  *Watkins*, 145 F.3d at 1090.  This case is also distinguishable from *Ellis v. Pierce County*, where the plaintiff there left the house on foot with a bottle of alcohol, the police canine sent by a deputy in search of the plaintiff bit the plaintiff without an order to do so, and the deputy permitted the canine to continue biting and pulling on the plaintiff even after she appeared to not be an immediate threat of harm to anyone.  *Ellis v. Pierce Cnty. by & through Pierce Cnty. Sheriff's Off.*, 716 F. Supp. 3d 1096, 1104 (W.D. Wash. 2024), *aff'd sub nom. Ellis v. Pierce Cnty.*, No. 24-1361, 2025 WL 853727 (9th Cir. Mar. 19, 2025).

Viewing the totality of the circumstances here, Plaintiff has not presented sufficient evidence to raise an issue of fact as to whether a Fourth Amendment violation occurred, and Defendant is entitled to qualified immunity as to Plaintiff's

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 23

Fourth Amendment excessive force claim.

### C. Negligence

Defendant moves for summary judgment on Plaintiff's state law negligence claim. ECF No. 33 at 16-17. Washington common law recognizes negligence claims against police officers. *Mancini v. City of Tacoma*, 196 Wash. 2d 864, 879 (2021). To prevail on a negligence claim, a plaintiff "must show (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury." *Crowe v. Gaston,* 134 Wash. 2d 509, 514 (1998). Defendant argues Plaintiff's negligence claim fails because Defendant's actions did not fall below the expected standard of care, and Defendant is entitled to statutory immunity per RCW 10.99.070. ECF No. 33 at 16-17.

Under Washington law,

> A peace officer shall not be held liable in any civil action for an arrest based on probable cause, enforcement in good faith of a court order, or any other action or omission in good faith under this chapter arising from an alleged incident of domestic violence brought by any party to the incident.

RCW 10.99.070.

"Law enforcement officers are thus immunized from civil liability for conduct 'in the course of an arrest or other on-the-scene action such as entering the home to break up a fight.'" *Feis v. King Cnty. Sheriff's Dep't*, 165 Wash. App. 525, 551

1    (2011) (quoting *Roy v. City of Everett*, 118 Wash. 2d 352, 357-58 (1992)).

2        Plaintiff argues that the state statute mandating an arrest of a domestic

3    abuser does not authorize an officer to arrest by any means necessary, and

4    Defendant still had a duty to not violate Plaintiff's Fourth Amendment rights.  ECF

5    No. 37 at 19.  Plaintiff contends that a question of fact exists as to whether

6    Defendant breached a duty owed to Plaintiff and was therefore negligent.  *Id.*

7    However, Plaintiff's negligence claim is a state law claim, and Plaintiff does not

8    address RCW 10.99.070 nor cite to any authority that creates an exception to such

9    an immunity for Fourth Amendment violations.  Moreover, the Court has found no

10   Fourth Amendment violation by Defendant.  The Court grants summary judgment

11   in Defendant's favor and dismisses Plaintiff's state law negligence claim.

12       **D.    Outrage**

13       Defendant moves for summary judgment on Plaintiff's outrage claim.  ECF

14   No. 33 at 17-18.  "The elements of the tort of outrage are '(1) extreme and

15   outrageous conduct; (2) intentional or reckless infliction of emotional distress, and

16   (3) actual result to the plaintiff of severe emotional distress.'"  *Fondren v. Klickitat*

17   *Cty.*, 79 Wash. App. 850, 861 (1995) (citation omitted).  "To be held liable for the

18   tort of outrage, the defendants' conduct must have been 'so outrageous in

19   character, and so extreme in degree, as to go beyond all possible bounds of

20   decency, and to be regarded as atrocious, and utterly intolerable in a civilized

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 25

community.'" *Spurrell v. Bloch*, 40 Wash. App. 854, 862 (1985) (quoting *Grimsby v. Samson*, 85 Wash. 2d 52, 59 (1975)). "The question whether certain conduct is sufficiently outrageous is ordinarily a question for the trier of fact," but the court "must determine in the first instance that reasonable minds could differ on whether the conduct has been sufficiently extreme and outrageous to result in liability." *Spurrell*, 40 Wash. App. at 862.

Defendant contends that Plaintiff cannot establish that the canine bite went beyond all bounds of decency because Plaintiff was actively resisting arrest when it was executed. ECF No. 33 at 18. Plaintiff responds that a question of fact exists as to whether using the canine as a weapon to cause Plaintiff to fall from the attic was outrageous conduct that recklessly caused Plaintiff severe emotional distress. ECF No. 37 at 20. The Court again disagrees with Plaintiff.

Defendant's execution of the bite and hold on Plaintiff's calf was reasonable under the specific set of circumstances and was not so outrageous as to "go beyond all bounds of decency." Plaintiff's outrage claim is dismissed.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (ECF No. 33) is **GRANTED**.

2. Plaintiff's 42 U.S.C. § 1983 Fourth Amendment excessive force claim brought against Defendant Amber Tyler in her individual capacity; and

(2) Plaintiff's common law negligence and common law intentional tort claims brought against Defendant Amber Tyler personally are **DISMISSED with prejudice**.

3. Pursuant to the parties Stipulation of Dismissal (ECF No. 32), all of Plaintiff's remaining claims against all other Defendants are **DISMISSED with prejudice.** Defendants' cross-claim under RCW 4.24.350 for malicious prosecution is **DISMISSED with prejudice** in its entirety.

The District Court Executive is directed to enter this Order, enter judgment in favor of Defendant Amber Tyler, furnish copies to counsel, and close the file. Each party to bear its own costs and expenses.

DATED  February 19, 2026.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 27